ROBINSON *v.* STATE

No. 42712 October 28, 1963 157 So. 2d 49

*J. W. Kellum,* Sumner, for appellant.

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

McElroy, J.

The appellant was jointly indicted with Wayne J. Lanham, but tried separately and convicted of the crime of burglary. From a sentence of five years in the penitentiary, he appeals and assigns as error the introduction of a confession to a policeman, claiming said confession was involuntarily given, and also assigns as error the introduction of evidence by said policeman showing that his co-indictee was in the custody of the federal authorities.

While in the custody of the officers at the jail in Clarksdale, a policeman of the city was interrogating appellant about the alleged crime of which appellant, at first, denied any guilt, but after questioning him for approximately an hour, according the the policeman's testimony, he changed his story and admitted his guilt; however, such was done after the policeman had made the statement to appellant that he was not telling the truth about the matter, because the other two defendants had told their story and confessed.

The town marshal stated in part that "he was pretty sure that he had talked to the defendant in the presence of others. He was picked up around the 8th or 9th for interrogation. It was quite a while ago — I don't remember the exact time — strictly on a guess I would

say it was in the afternoon. We talked to him in the back in what is called the Sheriff's office, in the presence of Mr. Weeks and Mr. Joe Davis. If I'm not mistaken, there were a couple more, it might have been Mr. Farris or the Sheriff. . . . Well, we told Jerrell (Robinson) that we had talked to the other two boys, and they had come clean, and that we wanted at this time to give him an opportunity to do the same thing. We explained to him that they had committed a crime, and that the only right thing to do was to clear themselves, or 'come clean', and if you committed the crime, *the best thing to do is come square with the State, or the City, whoever the crime was against;* that it doesn't do any good to try to hide a crime if you committed it. You know you did wrong and you have been caught. . . . We gave him a chance to tell his story, and he told us about going and getting a coke. I can't say that I said that, exactly, but if I followed my regular routine, I said it — 'you are not telling us the whole story about the thing, now; the other members in your so-called gang have confessed to the whole story, why don't you tell the truth? If you don't want to tell the story, then that's all right. The other members have told the story and *the thing to do is to square yourself, not only with us but with the Man Upstairs, and if you don't do that, you are not trying to help yourself.'* . . . So we went back into the routine about 'helping yourself and getting the thing cleared up once and for all and forget about it. If you tell the truth, you can forget it, and not say "I don't know anything about it" and have it on your conscience the rest of your life.' '' He said they were questioned about thirty minutes or an hour, at the most.

The question before the Court is whether there was a promise or an inducement offered to defendant if he confessed. █ The test in such cases is whether the inducement is of a nature calculated under the circumstances to induce a confession irrespective of its

truth or falsity; a mere exhortation or adjuration to speak the truth will not exclude a confession, but where such adjuration is accompanied by an expression that it would be better for the accused to tell the truth, some courts have refused to admit such confession. Frazier v. State, Fla., 107 So. 2d 16; Matthews v. State, 102 Miss. 549, 59 So. 842. It has been held that a statement by the Sheriff that it would make it better for him if he would tell all about it makes the confession incompetent. Mitchell v. State, Miss., 24 So. 312.

■■■ We believe that since the officer was so positive in his statements — that the other two had "come clean" and they wanted to give appellant an opportunity to do the same thing, that the best thing to do was to "square with the State, or the City, whoever the crime was against", that he should go ahead and tell the truth, that they had the "deadwood"on them, that the other members of the so-called gang had told their story, that the thing to do was to square himself not only with them but with the "man upstairs" and that if he didn't he wasn't trying to help himself — they were equivalent to an inducement offered the defendant of help not only with the officials but with the man upstairs, and therefore his confession was involuntarily given. The facts show that they were in the Sheriff's office. The Court may take judicial knowledge of the fact that most courtrooms are upstairs, and the defendant was justified in believing that the Sheriff, and even the judge himself, would help him if he confessed.

We do not believe there is merit in the fact that the officer did not advise or warn appellant that any statement he might make could be used against him in the trial of the case. Lewis v. State, 222 Miss. 140, 75 So. 2d 448.

■■ ■ The appellant objected to the state being allowed to show that Lanham, co-indictee of appellant, was at the time of the trial of the appellant in custody

614

of federal authorities. We see no merit in this assignment of error, since Lanham could have been used as a witness in the case and it was proper for the state to show where he was by way of explanation and avoidance of any inference of not using him as a state's witness. Chatman v. State, 145 So. 2d 707.

The case is therefore reversed and remanded.

Reversed and remanded.

*Lee, P. J., and Kyle, Rodgers and Jones, JJ.,* concur.